## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

KYRA H. W.,                          )
                                     )
            Plaintiff,               )
                                     )
v.                                   )         Case No. 20-CV-00609-CDL
                                     )
KILOLO KIJAKAZI[1],                  )
Acting Commissioner of the          )
Social Security Administration,     )
                                     )
            Defendant.               )

## OPINION AND ORDER

Plaintiff seeks judicial review of a decision of the Commissioner of the Social

Security Administration (Commissioner) denying Social Security disability benefits.  The

parties have consented to proceed before a United States Magistrate Judge in accordance

with 28 U.S.C. § 636(c)(1), (2).  For the reasons set forth below, the undersigned **affirms**

the Commissioner's decision denying benefits.

### I.      Standard of Review

The Social Security Act (the Act) provides disability insurance benefits to qualifying

individuals who have a physical or mental disability. *See* 42 U.S.C. § 423.  The Act defines

"disability" as an "inability to engage in any substantial gainful activity by reason of any

---

[1]      Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo
Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this
action.  No further action need be taken to continue this suit by reason of the last sentence
of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.    Procedural History

Plaintiff filed an application for supplemental security income (SSI) disability benefits on October 22, 2018. (R. 89). Plaintiff alleges she became disabled due to post-traumatic stress disorder (PTSD), high blood pressure, mild left anterior descending (LAD) heart disease, depression, anxiety, spinal stenosis, scoliosis, two bulging and herniated

2

discs in her lower back, a pinched nerve in her back, anemia, difficulty standing or walking for long periods of time, difficulty lifting, and chronic back pain.  (R. 89-90).  Plaintiff was nineteen years old on the alleged onset date of January 1, 2018.  However, because SSI benefits are not payable prior to the month following the month in which the application was filed, the Administrative Law Judge (ALJ) reviewed Plaintiff's claim for disability since October 22, 2018, the date of her application.  (R. 11).

The Social Security Administration denied Plaintiff's application on initial review and on reconsideration.  (*See* R. 10).  Plaintiff subsequently requested a hearing before an ALJ.  The ALJ held a hearing on April 20, 2020.[2]  *Id.*  Testimony was given by Plaintiff and Vocational Expert (VE) Amanda Armstrong.  *Id.*  On May 5, 2020, the ALJ issued a decision denying disability benefits. (R. 7-28).   On September 25, 2020, the Appeals Council denied Plaintiff's request for review, which rendered the ALJ's decision the agency's final decision.  (R. 1).  Accordingly, the Court has jurisdiction to review the ALJ's May 5, 2020 decision under 42 U.S.C. § 405(g).

### III.   The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of

---

[2]   Plaintiff consented on the record to a hearing by telephone due to the extraordinary circumstances presented by the COVID-19 pandemic and all participants attended via telephone.

impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id*.

### A.     Step One

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 22, 2018.  (R. 12).

### B.     Step Two

At step two, the ALJ determined that Plaintiff has the following severe impairments: obesity, major depressive disorder, generalized anxiety disorder, and PTSD.  *Id*.  The ALJ also found non-severe mental impairments of hypertension and LAD heart disease, spine disorder with scoliosis, and remote burn injury requiring skin graft.  *Id.*

## C.    Step Three

The ALJ stated the record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairments. (R. 15).  The ALJ found that Plaintiff's obesity, alone or in combination with another impairment(s), does not medically equal a listed impairment.  *Id.*

Regarding Plaintiff's mental impairments, the ALJ specifically addressed Listings 12.04, 12.06, and 12.15.  *Id.*   The ALJ also addressed the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. (R. 15-17; *see* 20 C.F.R. § 404 Subpt. P App'x 1). To satisfy the paragraph B criteria, a claimant's mental impairments must result in at least one extreme or two marked limitations in four areas of functioning. 20 C.F.R. § 404 Subpt. P App'x 1. A marked limitation means that the claimant's functioning in the area independently, appropriately, effectively, and on a sustained basis is seriously limited. *Id.* An extreme limitation means the inability to function independently, appropriately, or effectively, and on a sustained basis. *Id.*   Here, the ALJ found that Plaintiff has a **mild** limitation in understanding, remembering, or applying information; a **mild** limitation in interacting with others; a **moderate** limitation in concentrating, persisting, or maintaining pace; and a **mild** limitation in adapting or managing oneself. (R. 15-17).  Because Plaintiff does not have at least one extreme or two or more marked limitations, the paragraph B criteria are not satisfied. (R. 17).  Finally, the ALJ also addressed the "paragraph C" criteria and determined that they are not satisfied. *Id*.  In accordance with these findings, the ALJ proceeded to step four.

### D.    Step Four

The ALJ determined that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 416.967(b) with the following limitations.  The claimant is able to lift or carry, push or pull 20 pounds occasionally and 10 pounds frequently. [Plaintiff] is able to sit, stand or walk six hours out of an eight-hour day, with normal breaks.  Based on PTSD, the claimant should avoid fumes and extreme heat.  The claimant should avoid hazards such as unprotected heights and moving machinery.  The claimant is able to perform simple, routine tasks with reasoning level 1-2, and [Plaintiff] should have only occasional public contact.

(R. 18).  In determining the RFC, the ALJ discussed Plaintiff's hearing testimony and medical records and opinions in the record, as summarized in part below.

### i.    Hearing Testimony

Plaintiff is five feet one and a half inches tall and weighs 270 pounds.  (R. 19). Plaintiff is not married and has no children. *Id.*  Plaintiff lives with her grandmother, who takes care of her.  (R. 18).  Plaintiff has never had a driver's license and her grandmother drives her places. (R. 19).  She does not have a problem with hygiene. *Id.* Plaintiff went through the tenth grade in school, and she can read and write.  *Id.*  She attempted unsuccessfully to obtain a GED certificate. Plaintiff stays home most of the day. (R. 18). She watches movies, feeds her pets, and helps with the housework. *Id.*  Plaintiff still talks to people she went to school with on Facebook and said that she loves children and enjoys being around them. *Id.*

Plaintiff alleges she has severe PTSD, sees and smells burning/smoke, and has high anxiety. (R. 19).  Plaintiff describes hallucinations when sleeping and states panic comes

on when going to bed every night. *Id.* She manages these feelings by having her grandmother come into the room and check the room. *Id.* Plaintiff waits for her grandmother to get up at 3 to 4 in the morning, and then she goes to sleep. *Id.*

Plaintiff sees her therapist every week, her case manager every week or two weeks, and her doctor every month or two months. *Id.* In therapy, she has learned about advice of life, finding ways to cope, and establishing life goals. (R. 18). Her case manager, Debra Walker, comes to her house to see if she needs anything and they talk. (R. 19). Her case manager helped her fill out applications for disability and food stamps. *Id.* Plaintiff sees a psychiatric medicine provider who prescribes medications for her PTSD, depression, and anxiety. *Id.* She has no side effects from her medications and states her doctor just changed some of her medications. *Id.*

Plaintiff worked for about a year, one day a week, at a gift shop. (R. 18, 62). Plaintiff would like to work, but she has not received any training, nor has she talked to her counselor about vocational rehabilitation. (R. 17). Plaintiff has goals and would like to have a social life outside of her home. *Id.* Plaintiff has applied for work. *Id.*

    **ii.**    **Medical Records and Opinion Evidence**[3]

Grand Lake Mental Health Center

Plaintiff has received consistent mental health treatment and medication management from Grand Lake Mental Health Center (Grand Lake) from 2016 through the

---

[3] Plaintiff's challenges in this appeal relate only to the ALJ's mental RFC determination. (*See* Pl.'s Br., Doc. 12 at 6). Accordingly, this opinion focuses on the relevant evidence relating to Plaintiff's mental impairments.

date of the decision. The records consist mostly of counseling and medication management notes, summarized as follows:   On August 21, 2018, Plaintiff denied having close friendships and was isolating, but she met people online.  (R. 16).  Plaintiff reported she had conflict with coworkers at the gift shop where she worked.  *Id.*  Plaintiff reported difficulty concentrating and following through with laundry or paperwork. *Id.*  Plaintiff reported her burn trauma still affected her.   *Id.*  Plaintiff had a Global Assessment of Functioning (GAF) Scale score of 39. (R. 20).

A counseling note on October 8, 2018 noted Plaintiff had a good attention span, linear thought process, and she made good eye contact.  (R. 16).  On December 28, 2018, Plaintiff reported her medications were working "fairly well," and although Seroquel made her drowsy, it benefitted the auditory-visual effects of her PTSD. (R. 20).  A counseling note on January 16, 2019 noted Plaintiff had a normal mental status. *Id.*  In February 2019, Plaintiff's GAF Scale score was 40. *Id.* (citing Exhibit 11F, page 3).

On April 24, 2019, medication management notes show Plaintiff reported depression at a level of 9/10, anxiety at a level of 8/10, with mood swings, hallucinations, nightmares, and poor sleep.  *Id.* (citing Exhibit 11F, page 16).  However, her mental status was normal, she was alert and oriented, with no acute distress, and a routine follow-up was scheduled in six weeks. (R. 17, 21).

On May 3, 2019, Plaintiff reported inadequate sleep impacted her daily functioning, but she was taking her medications as prescribed. (R. 21).  A short time later on May 20, 2019, a counseling progress note indicated Plaintiff had a euthymic mood, appropriate affect, good eye contact, good grooming, appropriate dress, good attention span, and linear

thought process. *Id.*   In August 2019, during a medication management appointment, Plaintiff reported mild depression and denied anxiety. *Id.*

On February 21, 2020, a Client Assessment Record (CAR) noted Plaintiff's continued complaints of depression with severe impact on functioning, PTSD which significantly affected sleep and caused hallucinations, and anxiety with panic symptoms that made it difficult to socialize or leave her home. *Id.*   However, she had recently volunteered as a camp counselor. (R. 16).  Plaintiff reported problems with memory. *Id.* Plaintiff reported her depression caused her to want to sleep and had a severe impact on her ability to accomplish basic tasks such as hygiene and caused lack of motivation. (R. 17).  Plaintiff reported she still lived with her grandmother and that her boyfriend is her close friend. (R. 16).  Plaintiff's GAF Scale score was 45.  (R. 20). (citing Exhibit 12F, page 2). The ALJ found that, although the GAF Scale score of 45 still indicated the presence of serious symptoms, counseling and medication management notes reflected improvement. *Id.*

A March 16, 2020 mental status examination revealed Plaintiff had an average fund of knowledge, good judgment, normal thought process and content, normal speech, and good short-term, immediate, and long-term memory. (R. 16).  Plaintiff was alert and oriented and had a good attention span and concentration. (R. 17).

<u>Psychological Consultative Examination</u>

On February 25, 2019, Melinda Shaver, Psy.D. performed a consultative examination.  Plaintiff reported PTSD due to history of childhood burns with weekly counseling and medication at Grand Lake for 3 years. (R. 20).  Plaintiff had coherent and

relevant speech, appropriate behavior, and made good eye contact.  (R. 16).  Plaintiff did not have a thought disorder.  *Id.*  Plaintiff had good recent and remote memory, but below-average intelligence, and poor fund of knowledge.  *Id.*  Plaintiff had good judgment, her insight was fair, and she was receiving mental health treatment.  *Id.*

Dr. Shaver observed Plaintiff to be sad, with dysthymic mood; however, she was cooperative and friendly.  *Id.*  Plaintiff reported she is anxious daily, but she socializes with her family, and she enjoys painting, reading, and drawing.  *Id.*  Plaintiff attends a burn camp for 5 days, once a year.  *Id.*  Plaintiff was able to complete some tasks in a timely and appropriate manner, she was oriented, and her sensorium was clear.  (R. 17).  Plaintiff could not perform serial 7 or 3 calculations but she could spell "WORLD" forward and backward.  *Id.*  Plaintiff related that she has trouble sleeping if she does not take medication, and she is able to manage her money.  *Id.*

Dr. Shaver diagnosed Plaintiff with "PTSD, major depressive disorder, recurrent, moderate, and personal history of physical/sexual/psychological abuse in childhood, victim of crime, with other problem related to employment, borderline intellectual functioning, and obesity." (R. 20).  Dr. Shaver noted "that although [Plaintiff] is receiving mental health treatment and taking psychotropic medication, it did not appear her symptoms had improved very much, such that she has a guarded prognosis." *Id*.

<u>Physical Consultative Examination</u>

On March 30, 2019, David Wiegman, M.D. performed a physical consultative examination.  Dr. Wiegman's findings were relatively normal, including good grooming,

10

and normal memory and concentration. (R. 14, 17). [4]  Plaintiff was alert, with fluent speech and clear thought processes.  *Id.*

Reviewing Source Medical Opinions

On April 19, 2019, reviewing state agency psychologist William Farrell, Ph.D. opined that Plaintiff can perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation.  (R. 22; *see* R. 100).  Reviewing state agency psychologist Carolyn Goodrich, Ph.D. concurred at reconsideration, in an opinion dated July 9, 2019. (R. 22; *see* R. 118).

The ALJ found the opinions of Dr. Farrell and Dr. Goodrich persuasive, in part. (R. 22). The ALJ noted that additional evidence received at the hearing level showed improvement in the GAF assessment and normal status in March and April 2020. However, the ALJ found the record as a whole supported limitations greater than those found by the State agency psychologists. (R. 23). Specifically, based on the nature of Plaintiff's PTSD, the ALJ found the evidence is more consistent with an RFC for simple, routine tasks, occasional public contact, and environmental restrictions.  *Id.*

**iii.    Past Relevant Work**

The ALJ found Plaintiff has no past relevant work.  Therefore, she proceeded to step five.  (R. 23).

---

[4]        This section only addresses the portion of Dr. Wiegman's report cited by the ALJ concerning Plaintiff's mental impairments.

### E.      Step Five

Based on the VE's testimony as to a hypothetical person with Plaintiff's RFC, the ALJ found that Plaintiff can perform the requirements of the following representative occupations:

> ***Marker***, light exertion, unskilled, specific vocational preparation (SVP) level 2, Dictionary of Occupational Titles (DOT) # 209.587-034, with 300,000 jobs existing in the national economy;
>
> ***Router***, light exertion, unskilled, SVP 2, DOT # 222.587-038, with 50,000 jobs existing in the national economy;
>
> and
>
> ***Collator operator***, light exertion, unskilled, SVP 2, DOT # 208.685-010, with 13,000 jobs existing in the national economy.

(R. 24).   Accordingly, the ALJ concluded at step five that Plaintiff is not disabled, as defined in the Social Security Act.  *Id.*

## IV.   Plaintiff's Arguments

Plaintiff challenges the ALJ's mental RFC determination, arguing: (1) the ALJ improperly discounted medical evidence; and (2) the ALJ failed to perform a proper determination of the consistency of Plaintiff's subjective complaints with the evidence of record. The Commissioner contends the ALJ's evaluation of the medical evidence and her consistency analysis of Plaintiff's subjective complaints are supported by substantial evidence in the record and free from error.

### A.      Medical Evidence

Plaintiff argues that the CAR scores assigned by her treating mental health source Grand Lake show that her mental impairments cause diminished levels of functioning and support a finding of disability.  Plaintiff argues the ALJ rejected the limitations identified

in and supported by the CAR and she failed to explain why she rejected this objective evidence. (*See* Pl. Br., Doc. 12 at 7).   Plaintiff argues the ALJ's failure to discuss this objective evidence and explain why she rejected it is reversible error. *Id.*

The Commissioner argues that the ALJ was not required to articulate her consideration of the persuasiveness of the CAR, as they are not a medical opinion under the regulations.[5]   The CAR is a diagnostic assessment of a patient's level of functioning used to assess the level of care required for treatment.   However, a medical opinion is a "statement from a medical source about what [a claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions" in their abilities to perform the physical, mental, and other work demands. 20 C.F.R. § 404.1513(a)(2).  While Grand Lake is an accepted medical source, Plaintiff's CAR score records do not specifically assess functional limitations related to employment. Thus, the ALJ was not required to articulate her evaluation of the persuasiveness of the CAR scores as a medical opinion.

Moreover, the ALJ's decision reflects that she reasonably weighed this evidence. In determining a Plaintiff's RFC, "[t]he record must demonstrate that the ALJ considered all

---

[5]     For claims filed on or after March 27, 2017, such as Plaintiff's claim here, the Commissioner does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinions." 20 C.F.R. § 404.1520c(a). The ALJ's decision must articulate how he considered the medical opinions or prior administrative medical findings from each medical source. *Id.* § 404.1520c(b)(1). The most important factors for the ALJ to consider are supportability and consistency, and the ALJ's decision must explain how he considered those factors in determining persuasiveness of a medical source's medical opinions or prior administrative medical findings. *Id.* § 404.1520c(b)(2).

of the evidence, but an ALJ is not required to discuss every piece of evidence.  Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)); *see also Bigpond v. Astrue*, 280 F. App'x 716, 718, 2008 WL 2222016 (10th Cir. 2008). The focus of disability determination is on the functional consequences of a condition, not the mere diagnosis. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (noting that an ALJ's failure to include an alleged limitation in the RFC is not error if the limitation is not supported by the medical record).

Here, the ALJ addressed the CAR in her opinion, but noted that "medication management treatment at Grand Lake on March 16, 2020 showed a mental status examination, which was normal in almost all areas."  (R. 21). (citing Exhibit 12F, pages 23-24).  As such, the ALJ's decision indicates that she weighed the CAR evidence and concluded that it does not require additional limitations in Plaintiff's RFC. The ALJ supported this conclusion with reference to specific evidence in the record.  Nothing further is required.  Further, even if the evidence could support a different finding, the Court cannot displace the agency's choice between two fairly conflicting views. *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007). Plaintiff's argument simply invites the Court to improperly re-weigh the evidence. *See Noreja,* 952 F.3d at 1177; *see also Lax*, 489 F.3d at 1084.

## B.    Plaintiff's Subjective Statements

Plaintiff argues the ALJ failed to perform a proper determination of the consistency of Plaintiff's subjective complaints of functional limitations with the evidence of record. Specifically, Plaintiff alleges her severe PTSD, depression, and anxiety cause functional limitations that preclude employment and are supported by the evidence in the record.

A claimant's subjective complaints of pain or other symptoms, alone, cannot establish disability. *See* 20 C.F.R. § 404.1529(a). In assessing the intensity and persistence of a claimant's pain, the Commissioner will consider objective medical evidence and will "carefully consider any other information [a claimant] may submit about [their] symptoms." 20 C.F.R. § 404.1529(c). In evaluating such statements, an ALJ must consider: "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a 'loose nexus'); and (3) if so, whether considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[6]  Consistency determinations "are peculiarly the

---

[6]      While the Commissioner now describes the analysis as involving a two-step process, the current regulatory policy generally comports with the approach as outlined in previous cases, including *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987) and *Keyes-Zachary v. Astrue*, 695 F.3d 1156 (10th Cir. 2012). *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). (Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value.").

The applicable regulations further explain that in evaluating pain, the Commissioner considers factors including

(i) [the claimant's] daily activities;

15

province of the finder of fact." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *see also White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001) (ALJ's evaluation of symptom allegations "warrant particular deference").[7] However, the ALJ must explain "the link between the evidence and" consistency determination. *Kepler*, 68 F.3d at 391; *see also* 20 C.F.R. § 404.1529 (ALJ must provide "specific reasons . . . supported by the evidence in the case record"). Courts "will not upset such determinations when supported by substantial

---

     (ii) The location, duration, frequency, and intensity of . . . pain or other symptoms;
     (iii) Precipitating and aggravating factors;
     (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
     (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
     (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
     (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c); *see also Keyes-Zachary,* 695 F.3d at 1167; *Branum*, 385 F.3d at 1273-74 (quoting *Hargis v. Sullivan,* 945 F2d. 1482, 1489 (10th Cir. 1991)) (describing several similar factors which should be analyzed).

[7]  The Commissioner no longer uses the term "credibility." *See* Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 (explaining purpose to "eliminat[e] the use of the term 'credibility' from [the Commissioner's] sub-regulatory policy, as our regulations do not use this term," and "clarify[ing] that subjective symptom evaluation is not an examination of an individual's character"). However, the agency continues to follow the same "fundamental rule . . . that 'if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [an ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities.'" *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 n.7 (10th Cir. July 6, 2021) (unpublished) (quoting SSR 16-3p).

evidence." *Wilson v. Astrue,* 602 F.3d 1136, 1144 (10th Cir. 2010) (citing *Diaz v. Sec'y of Health & Hum. Servs.,* 898 F.2d 774, 777 (10th Cir. 1990)).

Plaintiff asserts that the CAR scores assigned to her by Grand Lake support her testimony that the functional limitations from her mental impairments preclude employment.  (*See* R. 462-464, 610-612, 720-722).  However, as discussed *supra*, the CAR score records do not specifically assess functional limitations related to employment.  Here, the ALJ acknowledged that the February 2020 CAR noted that Plaintiff "continued to show complaints of depression with severe impact on functioning, PTSD which significantly affected sleep and caused hallucinations, and anxiety with panic symptoms that made it difficult to socialize or leave her home."  (R. 21).  The ALJ found the limitations assessed by the CAR were inconsistent with other evidence. Specifically, the ALJ cited evidence indicating that "medication management treatment at Grand Lake on March 16, 2020 showed a mental status examination, which was normal in almost all areas."  *Id.*  (citing Exhibit 12F, pages 23-24).  Moreover, the focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."). In this context, Plaintiff has failed to show that a more-detailed discussion of the CAR evidence was needed. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[t]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

The ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of symptoms are not fully consistent with the objective medical evidence and the other evidence of record. (R. 21). In support of this determination, the ALJ found "[Plaintiff] receives regular treatment, she cooperates with her grandmother to maintain her activities of daily living," "[Plaintiff] has a close relationship with her grandmother. . . [Plaintiff] works closely with her mental health treatment providers at Grand Lake," and "[Plaintiff] does not have medication side effects." *Id.* The ALJ's decision, as shown below, cited various medical records to support her finding that Plaintiff's symptoms improved with mental health treatment and medication management.

The ALJ noted that Plaintiff's medications were working "fairly well" as of December 28, 2018 "[a]lthough Seroquel made [Plaintiff] drowsy, it benefitted the auditory-visual effects of PTSD." (R. 20) (citing Exhibit 11F, page 21). The ALJ cited records of mental health examinations dated January 16, 2019, April 24, 2019, May 9, 2109, May 20, 2019, and March 16, 2020 with normal or near-normal findings, such as normal mood, affect, appearance, dress, thought process and content, and speech; and was alert and oriented with good memory, attention span, and concentration. (R. 16, 17, 20, 21) (citations omitted). The ALJ noted that on August 14, 2017, Plaintiff had a diagnosis of mild, recurrent major depression, and overanxious disorder. (R. 21). However, "[Plaintiff's] anxiety responded well to Hydroxyzine." *Id.* (citing Exhibit 5F, pages 1-2). Further, the PHQ depression screening showed that depression was not making it difficult at all to do work, take care of things at home, or get along with other people. *Id.* (*Id.* at 3).

The ALJ noted that in August 2019, Plaintiff "reported mild depression and she denied anxiety during medication management." *Id.* (citing Exhibit 12F, page 36).

The ALJ noted that Plaintiff's GAF scores of 39, 40, and 45 increased over time. (R. 20). The ALJ stated that "[a]lthough the GAF Scale score of 45 still indicates the presence of serious symptoms, the counseling and medication management notes at Grand Lake reflect improvement." *Id.* Plaintiff argues that although Plaintiff's GAF scores may have slightly improved, they never rose above 50, which still show serious symptoms that could affect the ability to work.[8] (*See* Pl. Br., Doc 12 at 14). Plaintiff states "[a] GAF score of fifty or less…does suggest an inability to keep a job." *Lee v. Barnhart,* 117 F. App'x 674, 678 (10th Cir. 2004) (emphasis added) (unpublished opinion), citing *Oslin v. Barnhart*, 69 F. App'x 942 (10th Cir. 2003) (*See* Pl. Br., Doc. 18 at 3).

While Plaintiff's GAF scores indicate serious symptoms that could potentially affect a Plaintiff's ability to work, the GAF scores alone, without an explanation as to how the scores were assessed, do not indicate Plaintiff's inability to work. In an unpublished opinion, the Tenth Circuit has noted that, "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy and taken

---

[8] According to the *Diagnostic and Statistical Manual of Mental Disorders*, (4th ed. 1994) at page 32, an Axis V of 41 to 50 means "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." An Axis V of 31 to 40 means "[s]ome impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."

alone does not establish an impairment serious enough to preclude an ability to work." *Holcomb v. Astrue*, 389 F. App'x 757, 759, at **2 (10th Cir. 2010) (quoting *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir. 2002) (noting the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate)).

Here, Plaintiff's GAF scores assessed by Grand Lake were not accompanied by further explanation about how the scores were calculated or how they are linked to Plaintiff's symptoms, nor do they explain how the assessed functional limitations are impairment-related restrictions to employment. Thus, the GAF scores alone do not indicate Plaintiff's inability to work. However, the GAF scores are objective evidence and should be considered when performing a consistency analysis of Plaintiff's subjective complaints.

Here, the ALJ found:

> I have considered the GAF Scale scores in the record, which have shown the presence of serious or more severe symptoms. GAF ratings are assessments of functioning at a specific time; however, over the longitudinal record the scores in this case show improvement in symptoms. I find this true given the process of recovery. However, I find limited persuasiveness from the GAF evidence. The GAF rating is one piece of evidence considered along with all the other evidence of record, and it is not here determinative of the residual functional capacity.

(R. 23). As such, the ALJ considered the GAF scores and reasonably determined they had limited persuasiveness in Plaintiff's RFC determination.

The ALJ also cited examples where Plaintiff's hearing testimony was not consistent with the severity of her alleged complaints. Plaintiff testified that she "does not have side effects from her medications." (R. 19). Plaintiff testified that she worked for one year, one day a week, at a gift shop. (R. 18). Plaintiff testified she would like to work, but she has

not received any training, nor has she talked to her counselor about vocational rehabilitation. (R. 17).  Plaintiff has goals and would like to have a social life outside of her home.  *Id.*  Plaintiff has applied for work. *Id.*

Plaintiff argues her subjective complaints are supported by the report of Dr. Shaver. Dr. Shaver found that "although [Plaintiff] is receiving mental health treatment and taking psychotropic medication, it did not appear her symptoms had improved very much" and she "had a guarded prognosis." (R. 20).  Dr. Shaver also opined that the Plaintiff is not capable of managing benefit payments in her own interest.  (R. 583). The ALJ considered the opinion of Dr. Shaver and found that it was not consistent with the other record evidence cited in her decision that showed "[Plaintiff's] symptoms improved with ongoing counseling and medication management."  (R. 20).

The ALJ also found Plaintiff's subjective statements were not consistent with her activities of daily living.  As noted above, Plaintiff testified that she stays home most of the day and watches movies, feeds her pets, and helps with the housework. (R. 18). Plaintiff testified she still talks to people she went to school with on Facebook.  *Id.* Plaintiff testified she does not have a problem with hygiene.  (R. 19).  Plaintiff testified that she shares the responsibilities for the home with her grandmother.  *Id.*  Plaintiff reported to Dr. Shaver that she does a little cooking, some cleaning, and grocery shopping. (R. 17).  Plaintiff reported to Dr. Shaver that she is able to manage money. *Id.* (citing Exhibit 8F).  The ALJ noted that Plaintiff's is committed to volunteering at Oklahoma Firefighter's Burn Camp.  (R. 21).

The ALJ did not discount all of Plaintiff's complaints.  To the contrary, the ALJ acknowledged Plaintiff's statements regarding her functional limitations and determined they warranted further restrictions in the RFC determination.  (*See* R. 18, 21-23).  The ALJ limited Plaintiff to simple, routine tasks with reasoning level 1-2 with only occasional contact with the public, due to her functional limitations as a result of her anxiety, depression, and PTSD.  (*See* R. 22-23).  The ALJ further limited Plaintiff from exposure to fumes and extreme heat to avoid possible PTSD triggers. (*See* R. 22).   The ALJ supported her findings by citing specific evidence in the record she relied upon in finding Plaintiff's mental impairments are not as limiting as alleged.  Nothing more was required. Furthermore, as the Commissioner correctly argues, no treating source offered a medical opinion indicating that Plaintiff was more limited that the ALJ found in her decision.

## V.    Conclusion

The undersigned finds the ALJ's decision is supported by substantial evidence and reflects that the ALJ applied the proper legal standards. Therefore, the undersigned **affirms** the decision of the Commissioner finding Plaintiff not disabled.

ORDERED this 23rd day of March, 2022.

Christine D. Little
United States Magistrate Judge